BANK OF KEN-
TUCKY
vs
GAREY, &c.

---

PET. & SUM.

*Case 143.*

July 9.

The case stated.

## Bank of Kentucky *vs* Garey, &c.

APPEAL FROM THE WARREN CIRCUIT.

*Bills of Exchange. Protests.*

JUDGE BRECK delivered the opinion of the Court.—JUDGE MARSHALL did not sit in this case.

THIS was a petition and summons brought by the President, Directors and Company of the Bank of Kentucky, against Garey as drawer, Samuel McFaddin as acceptor, and McElwain, Clark, Thomas McFaddin and Potts as endorsers.

The case was submitted to the Court below, upon an agreed state of facts. The accepter having made no defence, the court rendered judgment against him, but as to the drawer and endorsers, was of opinion the plaintiffs

were not entitled to recover, and accordingly rendered judgment in their favor with the exception of Clark, as to whom the suit was abated, but without precluding the plaintiffs from another action.

The plaintiffs have appealed to this Court.

The facts agreed, presents this state of case.

The bill sued on was payable to ———, and the name of the defendant, McElwain, inserted as payee by the plaintiffs counsel, during the progress of the cause, but before the trial. That the bill had been drawn by Garey, and severally endorsed by the defendants, McElwain, Clark, &c., McElwain being the first endorser, for the benefit of the acceptor and by him sold to the plaintiffs. That the drawer had no funds in the hands of the acceptor, and that there was no authority from the drawer or endorsers, to fill up the blank in the bill, unless such authority was implied by law from the foregoing facts.

Other facts were also agreed in regard to the protest, and notice thereof to the defendants, which will be referred to hereafter.

The first question presented for consideration, is whether the plaintiffs were authorized to fill that blank in the bill.

The doctrine is well settled, and has been repeatedly so recognized and decided by this Court, that the holder of a bill of exchange, is authorized to fill up a blank endorsement upon it, and which, done even at the trial, will have the same effect as if done before the institution of the suit.

It seems also to be well settled that the holder of a bill payable to ———, may insert his own name as payee, and that this may be done by any bona fide holder, and when done, that it will be deemed a bill, payable to such holder, as payee, ab initio: Story on Bills, Sec. 54; Chitty on Bills, 63, and authorities there cited; Ibid 177–8.

The authority of the holder thus to fill the blank in the bill, and to fill up the blank endorsement thereon, is implied by law from the mere acts of the parties in signing and endorsing it. It is but carrying out their presumed intention to render themselves responsible, and that

BANK OF KEN-
TUCKY
vs
GAREY, &c.

First question presented.

The holder of a bill of exchange may fill up a blank endorsement to himself even at the trial to have the same effect as if done before the institution of the suit.

So any bona fide holder of a bill payable to ———, may insert his own name as payee, and when done it will be deemed a bill payable to such holder ab initio.

BANK OF KEN-
TUCKY
vs
GAREY, &c.

the instrument should be rendered complete and available as a bill in the hands of a *bona fide* purchaser or holder.

Between the cases put and the one under consideration, we think it difficult to draw any sensible distinction.

The assignment
or endorsment
of a bill by a *bo-
na fide* holder
when the name
of the payee is
——, is an au-
thority to put in
the name of the
endorser as
payee.

Apart from the admitted facts McElwain may be presumed to have been the holder of the bill, before he endorsed it, and as such, as we have seen, authorized to insert his own name as payee. By endorsing it, the assignee acquired all his interests and rights, and the same control over the bill which he had posessed. As it was essential, therefore, to render the bill available in the hands of the assignee to insert the name of McElwain as payee, the law, we think, would imply authority in the assignee to make the insertion, which would be only doing what the assignee was authorized to do.

The facts admitted do not vary the case, except to render more manifest the authority of the plaintiff to fill the blank in the bill. It is admitted that the bill was drawn and endorsed for the accomodation of the acceptor, who for a valuable consideration sold it to the plaintiffs. It is evident it would be no accomodation to him, and would not effect the object intended, unless it could be rendered obligatory in the hands of a purchaser. The law, therefore, will imply authority from the drawee and endorsers, to the purchaser, to fill the blank in the only way, which would render it so. McElwain is the first endorser. He made the endorsement with a view to render himself responsible as such, and to pass the title to a purchaser. This could only be done by inserting his name as payee. The first endorsee is necessarily the payee, and the law will presume him so, in order to render the bill complete and available in the hands of a *bona fide* holder.

Upon principle and analogy, therefore, if not by express authority, we come to the conclusion that the plaintiffs were authorized to insert the name of McElwain as payee in this bill.

We are not satisfied that the doctrine applicable to bills when the payee is a ficticious name or person, should be applied to this case.

But it is insisted, and such was the opinion of the learn-ed Circuit Judge, that although the plaintiffs might be authorized to fill the blank in the bill, yet not having done so before they commenced their action, they were not entitled to recover. That there was no right of action till the blank in the bill was filled.

We do not concur in this view of the case, although the question is by no means free from difficulty. The doctrine is that a blank endorsment, transfers to the holder a right of action, but that he must fill it up before he is entitled to recover. That he must render certain by an express written assignment what before was implied : *Cope* vs *Daniel*, (9 *Dana*, 415.)

So when the holder of a bill payable to ———, inserts his own name as payee, he thereby, in legal contemplation, is deemed to have been such from the date of the bill.

In this case, upon the supposition that the law implied an authority in the plaintiffs to perfect their title to the bill by inserting the name of McElwain as payee, we think, when the insertion was made, he should be deemed to have been such from the commencement; and that the assignment to the plaintiffs, carrying with it authority to perfect the bill by filling the blank, transferred and vest-ed in them a right of action.

Upon the facts agreed we are entirely satisfied that notice of the protest was given in due and reasonable time.

But lastly it is contended that the protest itself was insufficient.

The Notary certifies that he presented the bill for payment by his deputy, Auguste Commandeur.

The doctrine is settled that presentation by the Clerk of a Notary is insufficient, unless authorized by the law or usage of the place where the protest is made : *Mc-Clain* vs *Fitch*, (4 *B. Monroe*, 599.

Official authority or the authority of the principal may be implied in a deputy, when no such authority would be implied in a mere Clerk. But we find no authority for presentation by a deputy. The question then turns upon whether the presumption should be indulged that such presentation is authorized by the law of Louisiana,

Presentation for payment of a bill or note by a Notary's Clerk is not a suffi-cient presenta-tion unless sanc-tioned by the usage of the place ; but when the Notary certi-fies under his seal that presen-tation was by his *deputy*, official authority may be implied in the deputy to make the demand.

LATHAM'S EX'RS.
AND HEIRS
*vs*
MORROW, *et al.*

or the custom of New Orleans, where the protest was made. The utter impracticability in a great commercial city, of having the multitude of drafts and notes, for which the official action of a Notary would be required, presented by the Notary in all cases in person, unless there were a great number of them, would seem to justify a law or custom of presenting by deputy.

The office of Notary is one in the commercial world of great importance and distinction. A solemn protest under the seal of such an officer, that he had duly presented the bill by his deputy, together with the seeming necessity of authorizing such presentation, furnishes in our opinion, *prima facie* evidence that the presentation and protest have been made in accordance with the law or usage of New Orleans.

The judgment is reversed and the cause remanded, that a new trial may be granted, and further proceedings had.

*Underwood* for appellants: *B. & A. Monroe* for appellees.